**United States District Court**
For the Northern District of California

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6                                         No. C 99-02863 CW

7    ARTHUR GRADY GARNER,
                                          ORDER DENYING
8              Petitioner,                PETITION FOR WRIT OF
                                          HABEAS CORPUS
9         v.

10   B.A. MAYLE,

11             Respondent.
     _____/

12

13        On June 15, 1999, Petitioner Arthur Grady Garner, a state

14   prisoner incarcerated at Pleasant Valley State Prison, filed a

15   petition for a writ of habeas corpus alleging seventeen claims for

16   relief including, inter alia, claims for ineffective assistance of

17   counsel and prosecutorial misconduct.  On September 7, 2000, the

18   Court denied Respondent B. A. Mayle's motion to dismiss for failure

19   to exhaust state court remedies.  Respondent filed a second motion

20   to dismiss on the ground that the petition was untimely filed.  On

21   September 28, 2001, the Court denied Respondent's second motion to

22   dismiss.[1]  On December 28, 2001, Respondent filed his answer.  On

23   September 30, 2002, the Court granted, in part, Petitioner's motion

24

25        [1]In a footnote, Respondent requests that the Court reconsider
26   its denial of his second motion to dismiss on the ground that, in
     Fail v. Hubbard, 315 F.3d 1059 (2001), the Ninth Circuit held that
27   delays in federal courts do not constitute extraordinary
     circumstances such that equitable tolling would apply.  Absent a
28   properly filed motion for reconsideration, the Court declines to
     revisit its decision.

**United States District Court**
For the Northern District of California

for appointment of counsel, appointing counsel for the limited
purpose of reviewing Petitioner's claims and briefing those claims
counsel considered to be potentially meritorious.  The Federal
Public Defender was appointed to represent Petitioner.  The Court
granted three requests filed by counsel to extend time to file
Petitioner's traverse.  On August 22, 2003, the Federal Public
Defender moved to withdraw as Petitioner's counsel.  On August 25,
2003, the motion was granted.  On October 17, 2003, attorney Eric
G. Babcock was appointed to represent Petitioner.  On June 14,
2004, Petitioner, through counsel, filed an abbreviated traverse
and requested that the Court grant additional time for him to
develop the facts.  On February 28, 2005, the Court issued an order
noting that the traverse filed by counsel did not follow the
instructions set forth in the Court's September 30, 2002 Order and
set a briefing schedule for Petitioner to file a traverse in
accordance with those instructions.  Thereafter, Petitioner,
through counsel, filed many motions for extensions of time to file
a traverse, all of which were granted.  On March 9, 2009,
Petitioner, through counsel, filed a supplemental traverse,
entitled "supplemental brief in support of petition for writ of
habeas corpus," arguing that two of Petitioner's claims were
potentially meritorious based on new evidence counsel had
discovered.  He also requested an evidentiary hearing based on the
new evidence.  On April 8, 2009, Respondent filed a supplemental
brief in support of his answer to the petition.

    Having considered all the papers filed by the parties, the
Court denies the motion for an evidentiary hearing and the petition

United States District Court
For the Northern District of California

for a writ of habeas corpus.[2]

PROCEDURAL BACKGROUND

In 1990, Petitioner was charged in San Mateo County with (1) attempted first degree murder of George Boitano, with special allegations of using a gun and causing infliction of great bodily injury; (2) assault with a deadly weapon with the same allegations; and (3) being a felon in possession of a firearm.  A jury convicted Petitioner on all counts.  Petitioner was sentenced to a term of life plus eleven years.  On June 18, 1992, the court of appeal found that, after the verdict, Petitioner had been insufficiently advised of the dangers of representing himself and remanded for the trial court to advise Petitioner properly, to allow Petitioner to choose if he wished to represent himself after such advisement, to rule on Petitioner's motions for a new trial and, if the motions were denied, to re-sentence Petitioner and reinstate the judgment.

On remand, Petitioner again chose to represent himself.  The trial court considered Petitioner's motions for a new trial, denied them and again sentenced Petitioner to life plus eleven years.  On October 28, 1993, the conviction was affirmed by the court of appeal and, on January 19, 1994, the California Supreme Court denied review.

Petitioner filed a petition for a writ of habeas corpus in the state superior court, in which he raised the claims of

---

[2]Respondent argues that several of Petitioner's claims are procedurally defaulted or are unexhausted.  Because all of the claims are denied on the merits, the Court does not address the issues of procedural default or exhaustion.  See Cassett v. Stewart, 406 F.3d 614, 623-25 (9th Cir. 2005) (where the petition fails to raise even a colorable federal claim, it may be denied without reaching the exhaustion issue).

United States District Court
For the Northern District of California

insufficiency of the evidence and ineffectiveness of counsel based on (1) failure to present the defense of insufficiency of evidence, (2) failure to move to suppress the evidence discovered in the search of Petitioner's brother-in-law's house, and (3) failure to object to the introduction of the shotgun used in the attack on the victim.  On December 10, 1993, in a reasoned decision, the court denied the petition.  In 1993, Petitioner filed two state habeas petitions in the California Supreme Court, case numbers S034361 and S035851, and in 1994, Petitioner filed another petition in the California Supreme Court, case number S038008.  The California Supreme Court summarily denied all three petitions.  On March 23, 1994, Petitioner filed a petition for a writ of habeas corpus in this Court, <u>Garner v. Marshall</u>, C 94-0983 CW.  In 1995, the Court granted Petitioner's motion to dismiss without prejudice on the ground that the petition contained unexhausted claims.  On August 21, 1995, Petitioner filed another petition in the California Supreme Court, case number S048357, which, on January 30, 1996, the Court summarily denied with a citation to <u>In re Swain</u>, 34 Cal. 2d 300, 304 (1949).[3]  In 1996, Petitioner filed another habeas petition in this Court, <u>Garner v. White</u>, C 96-0499 CW, which, on October 9, 1998, was dismissed without prejudice on Petitioner's motion so that he could further exhaust state court remedies.  In 1998, Petitioner filed three more petitions in the California Supreme Court, case numbers S074652, S074818, and S075635.  On December 22, 1998, the Supreme Court summarily denied the petition

---

[3] <u>In re Swain</u>, 34 Cal. 2d at 304, held that vague, conclusory allegations in a habeas petition are insufficient to warrant issuance of the writ and that any substantial delay in presenting a claim must be justified.

**United States District Court**
For the Northern District of California

1  in case number S074818.  On April 28, 1999, the Court summarily

2  denied the two other petitions, citing <u>In re Robbins</u>, 18 Cal. 4th

3  770, 780 (1998) and <u>In re Clark</u>, 5 Cal. 4th 750 (1993).[4]  On June

4  15, 1999, Petitioner filed the present petition.

5                    FACTUAL BACKGROUND

6  I. Facts of the Offense

7       The following facts are from the 1992 court of appeal

8  decision, <u>People v. Garner</u>, A052814 (June 18, 1992), Resp.'s Ex. A,

9  and the trial transcript.

10      In January, 1990, George Boitano lived alone at 380 Talbot,

11 apartment 310, in Pacifica, California.  In April, 1989, Boitano

12 had separated from his wife Cindy and the court had awarded him

13 $500 per month as spousal support.  Cindy Boitano was upset about

14 having to pay this.

15      At about 7:30 p.m. on Saturday, January 27, 1990, Boitano

16 heard a knock on his front door.  When Boitano opened the door, a

17 man wearing a raincoat and fisherman's cap told Boitano that his

18 truck was being towed from an underground garage.  Boitano

19 recognized the man as a friend of his brother-in-law, Ron Mattson,

20 but did not remember the man's name.

21      When Boitano saw the man pull out a shotgun, he immediately

22

23      [4]<u>In re Robbins</u>, 18 Cal. 4th at 780, addressed timeliness and
the fact that, if the petition is filed late, the petitioner has
24 the burden of establishing the absence of substantial delay, good
cause for such delay, or that an exception to the bar of
25 untimeliness applies.  <u>In re Clark</u>, 5 Cal 4th at 797, held that,
absent justification for the failure to present all known claims in
26 a single, timely petition for writ of habeas corpus, petitions that
are successive or untimely or both will be summarily denied unless
27 they allege facts which, if proved, would establish that a
fundamental miscarriage of justice occurred in the proceedings
28 leading to conviction or to sentence.

**United States District Court**
For the Northern District of California

slammed the door.  The man shot through the door, hitting Boitano in the hand and the side.  Boitano called 911 and gave a description of the man who shot him.  Boitano told the police he had met the man who shot him at the house he had shared with his wife and knew the man had been in prison with his brother-in-law.

Officer Anders Noyes of the Pacifica Police Department responded to the report of a shooting at Boitano's apartment.  When he arrived, he noticed an expended shotgun shell casing on the floor to the right side of the door to Boitano's apartment and two holes through the door.  Boitano told Officer Noyes that he recognized the shooter, but could not recall his name.  He described the suspect as thirty-three to thirty-five years old, brown hair, untrimmed mustache, about five feet ten inches tall, 170 pounds, wearing a green overcoat and green fisherman's hat, and carrying a shotgun.  At the hospital, Boitano told Officer Noyes that one and one-half years prior to that night, his brother-in-law brought to Boitano's house a friend who had just been paroled from Folsom prison and Boitano recognized the shooter as his brother-in-law's friend.

On February 8, 1990, with permission from Mattson's parole officer, the police searched Mattson's house and seized seven photographs of Mattson with other people.  The police showed these photographs to Boitano.  He identified Petitioner, who was in one of the photographs, as the man who shot him.  On February 27, 1990, Boitano identified Petitioner from a photo lineup.

Arthur Ray, a professional police informant for the past seventeen years who was paid fifty dollars for each court appearance, testified that he met Petitioner in the San Mateo

**United States District Court**
For the Northern District of California

County jail in April, 1990.  Ray testified that he was housed in E-1, the protective custody cell block, for security reasons because it was generally known that he was an informant.  The cell block had one small common area where inmates were generally allowed out one at a time for security reasons.  However, Ray believed, at that time, that no one in E-1 knew about him, so he felt comfortable asking the guard to leave him in the common room with Petitioner.  Ray testified that he did not know anything about Petitioner or his case and that, when he and Petitioner were in the common room together, Petitioner told him he was charged with murder for hire and proceeded to describe how he had committed the offense.  Ray testified that Petitioner told him that Petitioner went to Boitano's door, knocked and, when the door was opened with a chain across the entrance, fired through the door, hitting Boitano's hand and side.  Petitioner told Ray that he had received $200,000 for this, which Ray thought was exaggerated.  Petitioner did not tell Ray who had hired him.

Petitioner testified on his own behalf.  He stated that he had met Mattson in prison and they had remained good friends. Petitioner, who lived in southern California, occasionally did electrical work for Lloyd Steale.  On January 26, 1990, Petitioner decided to drive to the San Francisco Bay Area to spend Super Bowl weekend with Mattson.  He arrived in Pacifica at five or six a.m. and checked into the Pacifica Motor Inn under the name of Rick Red. Petitioner testified that he did not go to Mattson's house because he wanted to surprise him.

Petitioner testified that, shortly after 6 p.m. on January 27, he went across the street to the Moonraker restaurant, drank at the

7

**United States District Court**
For the Northern District of California

bar for approximately one and one-half hours, then went into the restaurant, ordered dinner, and, after dinner, returned to the bar. He testified that he stayed at the bar until 11 p.m. and left the bar only to make several phone calls from the pay phone at the Moonraker.   Petitioner stated that he abandoned his plan to surprise Mattson because the "weekend was over" and Lloyd Steale was concerned that if Petitioner partied all day on Sunday and then drove back to southern California, he would be unfit to work on Monday.

Petitioner testified that he did not speak with Arthur Ray. He stated that, while he was incarcerated in the San Mateo County jail, he was isolated from the other prisoners, and that he knew that Ray was an informant.

The defense presented two witnesses to corroborate Petitioner's testimony.  Donald Piosalan, the bartender at the Moonraker restaurant, testified that Petitioner arrived at the bar between 6 and 7 p.m. and remained at the bar continuously for an hour and a half to two hours before having dinner in the dining room.  He testified that, after Petitioner finished his dinner, he returned to the bar, left for only five or ten minutes, then returned and stayed until 11 p.m.  Alejandro Jaurequi, the piano player, testified that Petitioner was at the bar when he arrived at 6:30 p.m and he did not notice that Petitioner left the area for a long period of time.

James Whitehead, the defense investigator, testified that the round trip between the Moonraker and Boitano's apartment is five and one-half miles.  He testified that he drove from the Moonraker to Boitano's apartment, went up to Boitano's apartment and stood

8

outside the door for a few seconds, and then returned to the restaurant and that the round-trip took twenty and one-half minutes.

In rebuttal, the prosecutor called Tara Furnari, the hostess at the Moonraker restaurant. She testified that a person leaving the restaurant would have to pass the hostess podium where she was located. She testified that around 7:30 p.m., Petitioner left the restaurant for about fifteen or twenty minutes.

Detective Berwyn Ray Manley, a police officer in Pacifica, made a study similar to that performed by Mr. Whitehead. Detective Manley testified that it took him slightly more than twelve minutes to make the round trip between the Moonraker and Boitano's apartment. Detective Manley made the round trip drive five times, the last of which was videotaped. The videotape was admitted into evidence, with no objection from defense counsel.

II. Facts Regarding Remand

Petitioner was represented by appointed counsel, Douglas Gray of the private defender program, throughout the trial. Following the verdict, Petitioner filed a number of post-trial motions in pro per, including a <u>Faretta</u> motion[5] and a <u>Marsden</u> motion.[6] Some of the motions were based on the allegation that defense counsel was

---

[5]A <u>Faretta</u> motion is brought under <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975), in which the Supreme Court held that a defendant has a right under the Sixth and Fourteenth Amendments to waive counsel and represent him or herself.

[6]In <u>People v. Marsden</u>, 2 Cal. 3d 118, 124 (1970), the California Supreme Court held that the trial court deprived the defendant of his constitutional right to effective assistance of counsel when it denied his motion to substitute new counsel without giving him an opportunity to state specific examples of inadequate representation.

inadequate.  On the date set for sentencing, Petitioner asked that his counsel be relieved and requested a continuance.  The court indicated it was prepared to relieve defense counsel, but would not grant a continuance.  The court relieved defense counsel and Petitioner represented himself.  The court denied Petitioner's remaining motions and sentenced him to life plus eleven years.

On appeal, the court rejected Petitioner's argument that the trial court should have appointed counsel to represent him on the post-trial motions.  It explained that a request for self representation under Faretta does not trigger a duty to conduct a hearing regarding incompetence of counsel under People v Marsden. However, the court held that the trial court's failure to give any Faretta advisement regarding the dangers and disadvantages of self-representation required reversal of the denial of the post-trial motions and sentence.  The court remanded for the trial court to give appropriate Faretta warnings and to determine if Petitioner could give a knowing and intelligent waiver of the right to counsel.

On September 10, 1992, the matter came before the trial court on remand.  Petitioner expressed a desire for counsel, and the court appointed Mr. Gray, Petitioner's former attorney.  Petitioner expressed dissatisfaction with Mr. Gray.  After a recess, Petitioner asked to represent himself.  The court explained the dangers of self-representation to Petitioner and denied the motion for self-representation.  On September 23, 1992, Mr. Gray filed a memorandum of points and authorities in which he argued that Petitioner had the right to represent himself.  On September 25, 1992, Petitioner filed a document titled "Faretta Motion/Waiver" in

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   which he stated that he knowingly and intelligently waived his

2   right to counsel and wished to represent himself.

3        On September 25, 1992, the court again warned Petitioner of

4   the dangers of representing himself, but granted the motion for

5   self-representation.  The court then considered Petitioner's

6   motions, denied them and re-sentenced him to life plus eleven

7   years.

8   III. Facts Presented In Supplemental Brief

9        The supplemental brief Petitioner filed, through counsel in

10  this case, identified two claims as potentially meritorious:

11  (1) ineffective assistance of trial counsel for failing to

12  investigate the jail housing records of Petitioner and Ray, and

13  (2) prosecutorial misconduct for failing to disclose the jail

14  housing records to defense counsel.  Petitioner, through counsel,

15  submits the following exhibits in support of the supplemental

16  brief:  (1) a December 14, 2007 letter from Sergeant Dave Titus of

17  the San Mateo County Sheriff's office indicating that, according to

18  computer records, Petitioner and Ray were housed together in the

19  same jail facility for three and one-half hours on May 22, 1990;

20  (2) a March 26, 1992 affidavit from Michael Anthony, who was an

21  inmate at the San Mateo County jail in 1990 at the same time

22  Petitioner was housed there, indicating that he had notified

23  Petitioner that Ray was a well-known jail house informant and he

24  knows "as a fact that Art Garner did not confess to Art Jess Ray;"

25  (3) a March 31, 1992 affidavit from James Nyhan who declares that

26  he has personal knowledge that, from 1985 to 1989, Ray purchased

27  narcotics and used them and testified for state and federal

28  agencies to satisfy his drug addiction; (4) an unsigned declaration

**United States District Court**
For the Northern District of California

from Renee Malloy, dated June, 2008, in which she states that, in 2004 at church, she met a man named George Boitano, who told her that he wasn't sure of the identity of the man who shot him in the hand and side, but that he had been pressured by the law to identify him.

On the basis of this new evidence, Petitioner, through counsel, requests an evidentiary hearing to present further testimony from Malloy, Nyhan, Anthony, Sergeant Titus, and possibly other jail personnel and inmates housed at San Mateo County jail at the same time as Petitioner and Ray.

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).[7]  A decision is contrary to clearly established federal

_____

[7]AEDPA applies to this petition because it was filed after April 24, 1996, the day AEDPA was enacted.  See e.g. <u>Duhaime v.</u>
(continued...)

law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies habeas relief only if the error resulted in "actual prejudice."  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as of the time of the relevant state court decision.  <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

To determine whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established law, a federal court looks to the decision of the highest state court that addressed the merits of a petitioner's claim in a reasoned decision.  <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.  <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1230 (9th Cir. 2001).

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court

---

[7](...continued)
<u>Ducharme</u>, 200 F.3d 597, 600 n.3 (9th Cir. 2000) (petitioner convicted in 1979; AEDPA applied to petition filed in 1997).

decision on the claim.  In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  <u>Plascencia v. Alameda</u>, 467 F.3d 1190, 1197-98 (9th Cir. 2006); <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  <u>Plascencia</u>, 467 F.3d at 1198; <u>Himes</u>, 336 F.3d at 853.

In this case, the state courts provided a reasoned decision for only a few of Petitioner's claims.  The Court will conduct an independent review of the record of those claims that were not addressed in a reasoned state court decision.

DISCUSSION

I. Ineffective Assistance of Trial Counsel

   A. Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  <u>Id</u>.

To prevail under <u>Strickland</u>, a petitioner must pass a two-prong test.  First, the petitioner must show that counsel's performance was deficient in a way that falls below an objectively reasonable standard.  <u>Id.</u> at 687-88.  Second, the petitioner must

14

United States District Court
For the Northern District of California

show that the deficiency prejudiced him.  Id. at 687.  The first

prong of Strickland requires a showing that counsel made errors so

serious that counsel was not functioning as the "counsel"

guaranteed by the Sixth Amendment.  Id.  Judicial scrutiny of

counsel's performance must be highly deferential, and a court must

indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance.  Id. at 689;

Wildman v. Johnson, 261 F.3d 832, 838 (9th Cir. 2001).  A

difference of opinion as to trial tactics does not constitute

denial of effective assistance, United States v. Mayo, 646 F.2d

369, 375 (9th Cir. 1981), and tactical decisions are not

ineffective assistance simply because in retrospect better tactics

are known to have been available.  Bashor v. Risley, 730 F.2d 1228,

1241 (9th Cir. 1984).  Tactical decisions of trial counsel deserve

deference when: (1) counsel in fact bases trial conduct on

strategic considerations; (2) counsel makes an informed decision

based upon investigation; and (3) the decision appears reasonable

under the circumstances.  Sanders v. Ratelle, 21 F.3d 1446, 1456

(9th Cir. 1994).

    Under Strickland's second prong, the petitioner must show that

counsel's errors were so serious as to deprive him or her of a fair

trial, a trial whose result is reliable.  Strickland, 466 U.S. at

688.  The test for prejudice is not outcome-determinative, i.e.,

the petitioner need not show that the deficient conduct more likely

than not altered the outcome of the case; however, a simple showing

that the defense was impaired is also not sufficient.  Id. at 693.

The petitioner must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

15

United States District Court
For the Northern District of California

proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Id.</u> at 694. It is unnecessary for a federal court considering an ineffective assistance of counsel claim to address the prejudice prong of the <u>Strickland</u> test if the petitioner cannot even establish incompetence under the first prong. <u>Siripongs v. Calderon</u>, 133 F.3d 732, 737 (9th Cir.), <u>cert. denied</u>, 525 U.S. 839 (1998).

B. Counsel's Performance at Preliminary Hearing (Claim 1)

Petitioner claims that Linda Bramy, who represented him at his preliminary hearing, was ineffective because she presented no defense to the charges made against Petitioner and said nothing on his behalf.

Although a preliminary hearing is a critical stage of a criminal prosecution at which a defendant has a Sixth Amendment right to counsel, the role of counsel at a preliminary hearing is different from counsel's role at trial. <u>Foster v. Garcia</u>, 2006 WL 3392750 *12 (E.D. Cal.) (citing <u>Adams v. Illinois</u>, 405 U.S. 278, 281-83 (1972)). In California, the purpose of a preliminary hearing is to establish whether there exists probable cause to believe that the defendant committed a felony. <u>Id.</u> (citing Cal. Penal Code § 866(b)). Furthermore, the defendant's right to present witnesses is circumscribed. <u>Id.</u> (citing Cal. Penal Code § 866(a)).

The transcript of the preliminary hearing reveals no incompetence of defense counsel. <u>See</u> Resp's Ex. E, Preliminary Hearing Reporter's Transcript (Preliminary RT) at 5-39. The state presented one witness, Mr. Boitano, who testified that when he

opened the door to his apartment in response to a knock, he

recognized Petitioner as a friend of his brother-in-law and

immediately slammed the door when he saw Petitioner raise a shotgun

from beneath his coat.  Defense counsel cross-examined Mr. Boitano.

Given the limited purpose of the preliminary hearing, defense

counsel provided effective assistance.  She objected where

necessary and cross-examined the witness effectively.  Furthermore,

given the low standard of proof necessary to establish probable

cause, Plaintiff cannot show prejudice.  Therefore, this claim

fails.

      C. Counsel's Failure to Challenge Unreliable Identification
         (Claim 2)

Petitioner claims that his trial counsel was ineffective for

failing to challenge the procedure used to identify him because it

was unduly suggestive and unreliable.  Boitano told the police that

the shooter was a prison friend of his brother-in-law.  The police

searched Mattson's home and found seven photographs, several of

which were taken at a prison.  The police showed this group of

photos to Boitano, who picked out the photo of Mattson and

Petitioner.  About two weeks later, the police showed Boitano a

photo line-up which included a more recent photograph of Petitioner

provided by his parole officer.  Boitano pointed to the photo of

Petitioner and wrote, "no. 2 looks like the guy."

Procedures by which a defendant is identified as the

perpetrator must be examined to assess whether they are unduly

suggestive.  "It is the likelihood of misidentification which

violates a defendant's right to due process."  Neil v. Biggers, 409

U.S. 188, 198 (1972).  Unnecessarily suggestive pretrial

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

identification procedures alone do not require exclusion of in-court identification testimony; reliability is the linchpin in determining the admissibility of identification testimony. <u>Manson v. Brathwaite</u>, 432 U.S. 98, 100-14 (1977). Identification testimony is inadmissible as a violation of due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. <u>Van Pilon v. Reed</u>, 799 F.2d 1332, 1338 (9th Cir. 1986). An identification procedure is impermissibly suggestive when it emphasizes a single individual, thereby increasing the likelihood of misidentification. <u>Foster v. California</u>, 394 U.S. 440, 443 (1969); <u>United States v. Bagley</u>, 772 F.2d 482, 493 (9th Cir. 1985).

Any motion to challenge Boitano's identification of Petitioner would have failed. Petitioner claims the identification was suggestive because (1) Boitano only saw the shooter for a short time at his front door, (2) although Boitano said he recognized Petitioner, he could not remember his name, and (3) the police showed Boitano Petitioner's photograph multiple times. Boitano had met Petitioner socially on two prior occasions and had ample opportunity to observe him at the time of the crime. The fact that Boitano could not remember Petitioner's name is not relevant to his physical identification of Petitioner; Boitano was sure the shooter was the man Mattson had brought to his house two times in the past. Furthermore, the fact that the police showed Boitano several photographs of Petitioner does not make the identification suggestive -- the police first showed Boitano several photographs

18

they found in Mattson's apartment and Boitano identified Petitioner, who was in one of the photographs, as his assailant. To corroborate Boitano's first identification, two weeks later, police showed Boitano a photo line-up which included one photograph of Petitioner, and Boitano again identified Petitioner as the assailant. Counsel's failure to challenge the identification procedures was not deficient nor did it prejudice Petitioner. The state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court law.

D. Counsel's Failure to Move to Suppress Evidence (Claim 2)

Petitioner claims counsel was ineffective for failing to move to suppress the photographs the police seized at Mattson's house. Petitioner claims that he had an agreement with Mattson to store property at his house and that this agreement provided Petitioner with standing to challenge the search of the house.

The state superior court on habeas review denied this claim on the grounds that none of the evidence seized in the search of Mattson's residence belonged to Petitioner, nor was it alleged to have been found in an area where Petitioner was storing his property pursuant to some arrangement with Mattson, and both Petitioner and Mattson were on parole and subject to warrantless searches of their persons and residences.

In order to establish ineffective assistance of counsel based on counsel's failure to bring a suppression motion, a petitioner must show that: (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence. Ortiz-Sandoval v. Clarke,

United States District Court

For the Northern District of California

323 F.3d 1165, 1170 (9th Cir. 2003) (citing <u>Kimmelman</u>, 477 U.S. at 375).   In order to prevail on a motion to suppress based on a violation of the Fourth Amendment, the claimant must prove that the search or seizure was illegal and that it violated his or her reasonable expectation of privacy in the item or place at issue. <u>Kimmelman</u>, 477 U.S. at 374.   Trial counsel is not ineffective for failing to raise a meritless motion.  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005); <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996).

The Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee under the authority of a California statute requiring that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." <u>Samson v. California</u>, 547 U.S. 843, 850 (2006).

Both Petitioner and Mattson were parolees at the time of the search.  Because the search was precipitated by the attempted murder of Boitano, who knew his assailant as a friend of Mattson, the search of Mattson's home was supported by reasonable suspicion. Furthermore, because the police searched Mattson's effects, Petitioner did not have a reasonable expectation of privacy such that he had standing to object to the search.

Counsel was not ineffective for failing to submit a motion that would have been denied.  Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of federal law.

//

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E. Counsel Failed to Investigate and Prepare For Trial
(Claim 3)

Petitioner claims that counsel was ineffective because he failed to consult ballistics or other forensic experts who could have established facts to challenge Boitano's statements about the shooting.  Petitioner also asserts that counsel should have called an expert to testify about the uncertainties of eyewitness identifications.

A defense attorney has a general duty to undertake a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary.  Strickland, 466 U.S. at 691; Turner v. Duncan, 158 F.3d 449, 456 (9th Cir. 1998). Strickland directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491).  Where the decision not to investigate further is taken because of reasonable tactical considerations, the attorney's performance is not constitutionally deficient.  Siripongs, 133 F.3d at 734.  The petitioner bears the burden of overcoming the presumption that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995) (quoting Strickland, 466 U.S. at 689).  In considering claims of ineffective assistance of counsel, the court is not concerned with what is prudent or appropriate, but only what is constitutionally compelled.  Burger v. Kemp, 483 U.S. 776, 794 (1987).

21

If the claim is that counsel failed to investigate witnesses, the defendant must show what the witnesses would have testified to and how the testimony would have changed the outcome of the trial. United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987). The duty to investigate and prepare a defense does not require that every conceivable witness be interviewed. Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995). Further, a claim of failure to interview a witness cannot establish ineffective assistance when the witness's account is otherwise fairly known to defense counsel. Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986).

Petitioner fails to submit any declarations from experts to show what they would have testified to and how the testimony would have changed the outcome of the trial. Petitioner speculates that forensic evidence might have shown that the shotgun was fired from inside the apartment instead of from the outside. However, Petitioner fails to provide any evidence to support this speculation or to explain how examination of the scene would have overcome the photographic evidence showing the damage to the door and shotgun shells outside the door. Likewise, an identification expert would not have been helpful to Petitioner's defense because Boitano knew Petitioner from previous encounters. Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of federal law.

In his supplemental brief, based upon the declaration of Sergeant Titus, Petitioner argues that San Mateo County jail records show that Petitioner was not housed in the same unit with Ray on April 17, 1990, as Ray had testified at trial, and that the circumstances under which Ray said he met Petitioner and heard his

22

jailhouse confession were unlikely to have occurred.  Petitioner argues that this shows that counsel was ineffective for failing to investigate Ray's jail records.

In his letter, Sergeant Titus indicates that the facility in which Petitioner and Ray were housed in 1990 was torn down in 1994 and that, due to the length of time that has passed and the fact that the facility was torn down, there are no paper records or recreation logs in existence.  Sergeant Titus checked the computer records, which showed that Petitioner and Ray were in nearby cells on May 22, 1990 for three and one half hours.  Sergeant Titus indicates that the only way Petitioner and Ray could have had personal contact with each other was if they were both out for recreation at the same time on that day.  He states that, because Ray arrived during feeding time and shift change, it is unlikely they were at recreation time together.  However, he acknowledges that there is no way for him to be positive about this.

However, the testimony and documentary evidence submitted at trial established that Petitioner and Ray were housed together in the San Mateo County jail in April, 1990.  On direct examination, Petitioner testified that, after his arrest, he was housed in the San Mateo County jail and he saw Ray who was also in custody there.  RT at 535, 537.  He testified that, two hours later, he found out that Ray was an informant.  RT at 538.  On cross-examination, Petitioner admitted that Ray was housed near him in the protective custody area of the jail.  RT at 539, 541.  During Ray's testimony, the prosecutor introduced into evidence People's Exhibit 34, a certified copy of the booking sheet from the San Mateo County jail indicating that Ray was in that facility from April 14, 1990 to

April 18, 1990.  RT at 306.  Ray testified that he talked to Petitioner on April 17, 1990.  RT at 309.

Deputy Robert Tullos, who worked in the San Mateo County jail when Petitioner and Ray were there, testified that Petitioner was out in the day room area using the telephone when Ray came back from court.  RT at 637-38.  Deputy Tullos stated that Ray wanted to stay out in the day room to eat his chow instead of going into his "tank."  RT at 638.  Deputy Tullos testified that he told Ray that Petitioner would have to go back into his cell because Ray was in protective custody.  Deputy Tullos stated that, because Ray did not have a problem being in the day room with Petitioner and Petitioner did not have a problem being there with Ray, he left them out in the day room together.  RT at 638.

Petitioner has not submitted evidence that his attorney failed to investigate Ray's jail records.  Petitioner's assumption that he did not is based on the fact that he did not introduce at trial evidence such as that newly produced from Sergeant Titus that it was unlikely that Petitioner and Ray would have been allowed in the common room together.  However, even if such evidence had been available and had been produced, it would not have undermined the direct testimony of Deputy Tullos that, although it may have been unusual, Petitioner and Ray did spend time in the common room together.  Thus, any failure to investigate was not prejudicial.

Although habeas counsel submits the affidavits of Nyhan and Anthony, inmates at the San Mateo County jail at the same time as Petitioner and Ray, he does not discuss them in relation to this claim.  Nyhan states that Ray was a drug addict and a known informant.  Anthony states that he told Petitioner that Ray was an

informant, that he did not believe Petitioner confessed to Ray and that he did not believe Petitioner and Ray were alone in the common area together.  This testimony is either speculative or cumulative to the impeachment evidence regarding Ray that was already before the jury.  Therefore, counsel's performance was not deficient for failing to investigate or to call these witnesses to testify.  For all of these reasons, the state court's rejection of this ineffectiveness claim was not contrary to or an unreasonable application of Supreme Court authority.

F.  Counsel's Failure to Object to Videotaped Re-Enactment of Crime (Claim 5)

Petitioner claims that trial counsel was ineffective for failing to object to the admission into evidence of the prosecution video of its investigator's round trip from the Moonraker restaurant to Boitano's apartment.  Petitioner argues that the video should not have been admitted because there was no independent evidence that he left the restaurant and went to Boitano's apartment, the video was highly prejudicial and it was made during the day instead of at night when the offense occurred. Petitioner also claims the court had a sua sponte duty to exclude this evidence or that a limiting instruction should have been given.

The failure to object to the admission of highly prejudicial evidence against the defendant may constitute ineffective assistance of counsel, see, e.g., Boyde v. Brown, 404 F.3d 1159, 1179-80 (9th Cir.), amended 421 F.3d 1154 (9th Cir. 2005). However, counsel's failure to make a meritless objection is neither unreasonable nor prejudicial.  Jones v. Smith, 231 F.3d 1227, 1239

United States District Court
For the Northern District of California

n.8 (9th Cir. 2001); <u>Boag v. Raines</u>, 769 F.2d 1341, 1344 (9th Cir. 1985).

In California, demonstrative evidence, such as a re-enactment of a crime, even if it may have some prejudicial effect, is admissible, so long as it tends to prove a material issue or clarify the circumstances of the crime.  <u>People v. Robillard</u>, 55 Cal. 2d 88, 99 (1960), <u>overruled on other grounds in</u> <u>People v. Satchell</u>, 6 Cal. 3d 28 (1971); <u>People v. O'Brien</u>, 61 Cal. App. 3d 766, 780-81 (1976) (demonstrative evidence is admissible if relevant and where a proper foundation has been laid by testimony showing the reconstruction or re-enactment is accurate).

The videotape, which showed the prosecutor's investigator making the round trip from the Moonraker to Boitano's apartment in fifteen minutes, was relevant to dispute Petitioner's alibi defense that he was at the Moonraker restaurant during the time the crime took place and was introduced to rebut the testimony of defense investigator Whitehead, who stated that it took him twenty and one-half minutes to make the round trip from the Moonraker to Boitano's apartment.  Because an objection to the videotape would likely have been overruled, defense counsel's performance was not ineffective for failing to make such an objection.

Furthermore, <u>O'Brien</u>, 61 Cal. App. 3d at 779-80, held that the trial court did not abuse its discretion in allowing the jury to view surveillance positions of officers during daylight hours when the crime had taken place at night.  The court stated, "The fact that physical conditions upon or about the premises may have been to any degree altered is a fact to be considered by the trial court in exercising its discretion to permit or refuse to permit such

United States District Court
For the Northern District of California

view, and its conclusions in that regard will not be disturbed on appeal, in the absence of a clear showing of an abuse of discretion." Id. at 780.  In light of O'Brien, any failure to object to the video because it was made during the day instead of at night does not constitute deficient performance.

Furthermore, the trial court had no duty sua sponte to exclude the evidence or to give a limiting instruction.  The admission of contested evidence, even if erroneous, does not justify habeas relief unless its admission results in the denial of due process.

Therefore, the state court's denial of these claims was not contrary to or an unreasonable application of Supreme Court authority.

G. Counsel's Errors Regarding Jury Instructions (Claim 7)[8]

Petitioner claims that counsel was ineffective for not objecting to the judge's references to a shotgun in the jury instructions and in reading the charges in the information to the jury.  This argument fails because there was sufficient evidence -- Boitano's testimony, the damage to the door to Boitano's apartment and Boitano's hand, and the shotgun shells at the scene of the crime -- to support the conclusion that a shotgun was used in the crime.  Therefore, counsel was not ineffective for failing to make such an objection.

Petitioner, citing RT at 704, also claims that counsel was ineffective for not objecting to the court allowing, toward the end of the trial, the amendment of Count III in the information.  In

_____

[8]Claim 6, which includes claims of prosecutorial misconduct and ineffective assistance of counsel for not objecting to prosecutorial misconduct, will be discussed below, together with the claim of prosecutorial misconduct.

United States District Court
For the Northern District of California

his discussion of the amendment of Count III with the court, defense counsel noted that it was "dismally late in the proceedings to be correcting charging pleadings" and that such an amendment was not in the furtherance of justice, but acknowledged that allowing the amendment was within the discretion of the trial court. See RT at 704-05. Thus, counsel did object to the amendment. His representation was not deficient or prejudicial in this regard.

Petitioner, citing RT at 740, also claims that counsel was ineffective for withdrawing his request for CALJIC jury instruction 17.03.[9] Respondent argues that counsel's decision was a tactical choice. At page 740 of the Reporter's Transcript, the omission of eight jury instructions was discussed with the court and agreed to by both parties. Although the Court finds no reference to CALJIC 17.03 on that page, other documents in the record show that defense counsel requested that CALJIC 17.03 be given and that the request was withdrawn. Defense counsel submitted a list of requested jury instructions which included CALJIC 17.03. CT at 222-23. The list of jury instructions withdrawn or refused, indicates that CALJIC 17.03 was withdrawn. CT at 145.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Id. at 72; Cupp v. Naughten, 414 U.S. 141, 147

---

[9] CALJIC 17.03 provides that, when criminal charges are made in the alternative, the jury can find the defendant guilty of only one of the crimes charged.

United States District Court
For the Northern District of California

(1973).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  <u>Estelle</u>, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  <u>United States v. Frady</u>, 456 U.S. 152, 169 (1982) (citing <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)).

Counsel's considered decision to withdraw his request for CALJIC 17.03 does not constitute ineffective assistance.

Therefore, the state court's denial of Claim 7 was not contrary to or an unreasonable application of Supreme Court authority.

H. Failure to Object to Prosecutor's Vouching for Testimony (Claim 8)

Petitioner claims counsel was ineffective for failing to object to the prosecutor's vouching, in his closing argument, for informant Ray.  Petitioner brings a separate claim for improper vouching by the prosecutor.  Petitioner characterizes as vouching the following statement in the prosecutor's closing argument in rebuttal to the defense closing: "And as Art Ray told you, he's just not some jail house snitch.  He has been used for some 17 years by police departments throughout the state of California.  You heard what would happen to him if he told a lie on one of these cases, and that would be he wouldn't have another job.  That isn't circumstantial evidence either." RT at 743-44.[10]

A prosecutor may not vouch for the credibility of a witness.

_____

[10]Petitioner alleges that, in his closing argument, the prosecutor made other statements about Ray.  The Court has reviewed the prosecutor's closing argument and can find no other statements about Ray.

29

United States v. Sanchez, 176 F.3d 1214, 1224 (9th Cir. 1999). Improper vouching occurs when the prosecutor places the prestige of the government behind the witness or suggests that information not presented to the jury supports the witness's testimony. United States v. Young, 470 U.S. 1, 7 n.3, 11-12 (1985); United States v. Parker, 241 F.3d 1114, 1119-20 (9th Cir. 2001). The prosecutor must have reasonable latitude in his closing argument and may argue reasonable inferences based on the evidence. United States v. Jackson, 84 F.3d 1154, 1158 (9th Cir. 1996).

To warrant habeas relief, prosecutorial vouching must so infect the trial with unfairness as to make the resulting conviction a denial of due process. Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004). Factors for determining when reversal is required include: "the form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall." Parker, 241 F.3d at 1120.

The prosecutor did not vouch for Ray. He argued a reasonable inference from the evidence. The prosecutor gave no personal assurance that Ray was telling the truth and did not imply that he possessed any extra-record knowledge. Therefore, Petitioner's claim of improper vouching by the prosecutor fails. It follows that, because the prosecutor did not improperly vouch for Ray,

defense counsel's performance was not deficient for failing to make an objection based on improper vouching.  Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

I. Insufficiency of Evidence and Counsel's Failure to Challenge the Insufficiency (Claim 17)

Petitioner claims that the evidence against him was insufficient and counsel was ineffective for failing to challenge the insufficiency.  Petitioner argues that, if counsel had raised every claim Petitioner has brought in this petition, the result of the trial would have been different.

The state superior court on habeas review, citing California case law, denied the claim of insufficiency of the evidence because it was not cognizable on habeas review.  Resp's. Ex. C at 2.  The court denied the claim of ineffective assistance of counsel based on counsel's failure to present the "meritorious" defense of insufficiency of the evidence as follows:

> A review of the record demonstrates that the defense presented at trial was that petitioner was not the person involved in the shooting, and that he was in fact drinking in a bar at the time of the attack on the victim.  Petitioner's counsel presented witnesses which supported petitioner's version of the events, and petitioner in fact testified in his own behalf.  By their verdict, the jury impliedly rejected the defense version of events.  Petitioner has failed to demonstrate that counsel's performance was deficient, simply because the jury did not embrace the proffered defense.

Resp's. Ex. C at 2-3.

A state prisoner who alleges that the evidence in support of his state conviction is not sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas relief.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 321, 324 (1979).

United States District Court
For the Northern District of California

The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992) (quoting <u>Jackson</u>, 443 U.S. at 319).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  <u>Jackson</u>, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).

Boitano had ample time to observe the person who shot him and immediately told the police that he recognized the man as a friend of his brother-in-law.  Later, when the police showed Boitano several photographs of Mattson with different people, Boitano picked out a photograph of Mattson and Petitioner and positively identified Petitioner as his assailant.  Moreover, the fact that Petitioner, who lives in Southern California, was at a hotel just minutes away from Boitano's house in Northern California at the time of the shooting, was a coincidence that could not be ignored.  Furthermore, Petitioner used an alias when he checked into the motel and paid in cash.  And, although Petitioner claimed he drove up to Northern California to go to Mattson's Super Bowl party, he never contacted Mattson after he arrived in Northern California.

In comparison, Petitioner's alibi defense was weak.  He claimed he was at the motel restaurant the entire evening of the attack on Boitano.  Although the bartender and piano player

**United States District Court**
For the Northern District of California

testified on Petitioner's behalf that they saw Petitioner in the restaurant the entire evening, the restaurant hostess testified that she saw Petitioner leave for about twenty minutes.  Time experiments conducted by the defense and prosecution indicated that it was possible to make the round-trip drive from the restaurant to Boitano's house within approximately fifteen to twenty minutes.

When viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.  See Jackson, 443 U.S. at 321.  Counsel was not ineffective for failing to raise sufficiency of the evidence as a defense.  By presenting an affirmative alibi defense that Petitioner was innocent, defense counsel necessarily presented a theory that the evidence of his guilt was insufficient.  Therefore, the state court's denial of these claims was not contrary or an unreasonable application of Supreme Court authority.

II. Right to Private Counsel of His Choice (Claim 12)

Petitioner claims that he had a conflict of interest with the public defender's office because of his trial attorney's ineffectiveness and he had "a right to counsel I can trust, counsel that I can rely upon . . . and counsel that is adequate and also effective."  Petitioner argues that he had a right to representation on appeal by Quin Denvir because Petitioner had disclosed all the facts of his case to Mr. Denvir and Mr. Denvir had stated that he would be glad to be Petitioner's appointed counsel.

A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing.  Wheat v. United States,

33

486 U.S. 153, 159 (1988).  Nor is he entitled to an attorney who likes and feels comfortable with him.  United States v. Schaff, 948 F.2d 501, 505 (9th Cir. 1991).  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  Morris v. Slappy, 461 U.S. 1, 14 (1983).  The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  If a state court denies a motion for a different appointed attorney, the ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated.  Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (en banc).

Because Petitioner does not have the right to be represented by the attorney of his choice, his claim fails.  The state court's denial of this claim was not contrary to or an unreasonable application of federal law.

III. Ineffective Assistance of Appellate Counsel for Failure to Raise Certain Claims on Appeal (Claim 16)

Petitioner claims that the attorneys who represented him on his two appeals were ineffective for failing to raise the claims of ineffective assistance of trial counsel on the grounds discussed above, unconstitutional search and seizure, and the government's manufacture and presentation of "self-serving" evidence, and for failing to investigate facts supporting the claim that Ray committed perjury.

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland.  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  A defendant

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1 | therefore must show that counsel's advice fell below an objective
2 | standard of reasonableness and that there is a reasonable
3 | probability that, but for counsel's unprofessional errors, he would
4 | have prevailed on appeal.  Id. at 1434 & n.9 (citing Strickland,
5 | 466 U.S. at 688, 694).  Appellate counsel does not have a
6 | constitutional duty to raise every non-frivolous issue requested by
7 | the defendant.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983);
8 | Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997).  The
9 | weeding out of weaker issues is widely recognized as one of the
10 | hallmarks of effective appellate advocacy.  Miller, 882 F.2d at
11 | 1434.

12 | As discussed elsewhere in this order, the claims Petitioner
13 | argues should have been appealed lacked merit; thus, appellate
14 | counsel was not ineffective for failing to raise them on appeal.
15 | Furthermore, counsel who represented Plaintiff on his first appeal
16 | obtained a reversal for new post trial proceedings.  The state
17 | court's denial of this claim was not contrary to or an unreasonable
18 | application of Supreme Court authority.

19 | IV. Denial of Equal Protection and Due Process Rights to
     Participate in His Defense and to Conduct Investigation
20 | While Acting Pro Se (Claim 4)

21 | Petitioner claims that he was denied his right to participate
22 | in his defense while being represented by counsel and to represent
23 | himself meaningfully when he was pro se because he did not have
24 | access to the defense investigator's billing and activity sheets.
25 | Petitioner claims that access to these records was important so
26 | that he would not repeat any investigative efforts and could
27 | investigate any vital evidence that had been overlooked.
28 | Petitioner states that he submitted a motion for the production of

these records, but the trial court denied it.

Citing Teague v. Lane, 489 U.S. 288, 315 (1989), Respondent argues that habeas corpus relief is not available for a novel claim such as this.  In Teague, the Supreme Court held that a federal court may not grant habeas corpus relief to a prisoner based on a constitutional rule of criminal procedure announced after his conviction and sentence became final unless the rule fits within one of two narrow exceptions.  Id. at 310-316.

Because Petitioner is not relying on any newly announced rule to support his claim, it is doubtful that Teague applies here.  However, the claim fails simply because there is no Supreme Court authority indicating that such a constitutional right exists.  Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of federal law.

V. Prosecutorial Misconduct and Ineffective Assistance of Counsel for Failing to Object to It (Claim 6)

In his original petition, Petitioner claimed that the prosecutor committed misconduct by failing to comply with discovery orders, by not disclosing information regarding jailhouse informant Ray's background and by improperly putting Ray into Petitioner's area of the jail.  In his supplemental brief, Petitioner claims that Sergeant Titus' letter shows that the housing situation in the San Mateo County jail made it unlikely that Petitioner and Ray were ever together in the common area of the jail, and this information was not disclosed by the prosecutor.

The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence, either impeachment or exculpatory, is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  Brady v.

United States District Court
For the Northern District of California

Maryland, 373 U.S. 83, 87 (1963); United States v. Agurs, 427 U.S. 97, 107 (1976); United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  Id. at 682.

There are three components of a true Brady violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Petitioner's Brady claims fail either because they are not supported by evidence or because the record shows that the evidence he cites was not withheld from the defense.  Petitioner's claim that the prosecutor did not disclose Ray's background as a police informant is directly contradicted by the trial testimony.  On direct examination, Ray testified that he had been a professional police informant for the past seventeen years and, in that capacity, he worked as an independent contractor for a long list of law enforcement agencies.  RT at 304-05.  Ray stated that this work entailed purchasing narcotics and stolen property, and that he also sold information to law enforcement agencies.  RT at 304, 315.  Ray stated that he had testified in court as an informant thousands of times in felony cases and was paid fifty dollars for each court appearance.  RT at 305.  On cross-examination, Ray testified that in one year he earned approximately $20,000 for his work as an

United States District Court
For the Northern District of California

informant.  RT at 317.

Furthermore, as discussed above, the prosecution introduced into evidence the booking sheet from the San Mateo County jail, which indicated that Ray was incarcerated there from April 14 to April 18, 1990.  RT at 306.  The speculative letter from Sergeant Titus, written seventeen years after the events at issue took place and after the jail facility and its records were destroyed, cannot overcome the probative evidence introduced at trial that Ray was with Petitioner in the common room at the San Mateo Country jail on April 17, 1990, the day he testified that he spoke to Petitioner. Furthermore, defense counsel and the jury knew that generally only one person at a time was allowed in the E-1 common room, so that it would have been unusual for Ray and Petitioner to have had an opportunity to speak there together.  Thus, the jury either believed that Ray and Petitioner did have a conversation in jail or that the evidence against Petitioner was so strong that Ray's testimony was not essential to find that Petitioner was guilty of the crimes charged.  There is no reason to believe that, at the time of the trial, the prosecutor had undisclosed evidence that Ray and Petitioner did not talk.

Finally, although Petitioner asserts that the prosecutor improperly placed Ray in the jail facility where Petitioner was housed, he submits no evidence of this.

For all these reasons, there was no prosecutorial misconduct or _Brady_ violation.  The state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

//

38

**United States District Court**
For the Northern District of California

VI. Plain Error Standard Applies (Claim 9)

Petitioner contends that the plain error doctrine applies to his petition and that his rights were violated because he did not have a fair trial, an unbiased judge and effective assistance of counsel.  It seems that Petitioner is claiming that the court was unfair because it did not grant the motions he submitted when he decided to represent himself after his case was remanded.

The ruling on Petitioner's second appeal upheld the trial court's denial of his motions and re-sentencing on the ground that his waiver of his right to counsel was knowing and intelligent. The appellate court found that, although he claimed error because the trial court failed to grant him a continuance, he acknowledged that he never requested a continuance.  Resp.'s Ex. B.

The plain error standard does not apply to this petition.  As explained above, AEDPA applies, and the Court must decide whether the state court's opinion was contrary to or an unreasonable application of Supreme Court authority.  Insofar as Petitioner's claim involves the trial court's rulings after remand, the Court can find no constitutional error.  Therefore, the appellate court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

VII. Trial Court Should Have Disqualified Itself (Claim 10)

Petitioner claims that on January 9, 1991, the trial judge made remarks which showed that he was biased against Petitioner. These "remarks" consisted of the judge's rulings on Petitioner's motions, his statements regarding future rulings and his statement that he would not grant any of Petitioner's motions for continuances.  Petitioner also claims that the judge should have

**United States District Court**
For the Northern District of California

recused himself because, on July 8, 1992, Petitioner filed a civil rights lawsuit against him.

Respondent correctly points out that, under California Code of Civil Procedure § 170.2(b), a judge's expression of a view on a legal or factual issue presented in a judicial proceeding does not constitute grounds for disqualification. Furthermore, Petitioner's life plus eleven year sentence was imposed on January 9, 1991, CT at 303, and he filed his lawsuit on July 8, 1992. A lawsuit filed after the sentence was imposed cannot have affected the trial or the sentence.

Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

VIII. Prosecutor Should Have Been Disqualified (Claim 11)

Petitioner claims that, because he filed a civil rights lawsuit against the prosecutor on July 8, 1992, there was a conflict of interest between himself and the prosecutor such that Petitioner could not receive a fair and impartial trial and the court should have disqualified the prosecutor. As discussed above, the trial was over and Petitioner was sentenced before he filed the lawsuit. Therefore, the lawsuit could not have biased the prosecutor against Petitioner. The state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

IX. Writ of Error Coram Nobis (Claim 13)

Petitioner claims that the trial court, on its own motion, should have held a hearing regarding the warrantless search of Mattson's apartment and should have suppressed the photograph of

40

United States District Court
For the Northern District of California

1   himself and Mattson as the fruit of the warrantless search.  He

2   seeks a writ of error coram nobis to remedy this claimed error.

3       The writ of error coram nobis affords a remedy to attack a

4   conviction when the petitioner has served his sentence and is no

5   longer in custody.  Telink, Inc. v. United States, 24 F.3d 42, 45

6   (9th Cir. 1994); United States v. Walgren, 885 F.2d 1417, 1420 (9th

7   Cir. 1989).  Here, Petitioner is still in custody.  Further,

8   district courts are authorized to issue a writ of coram nobis in

9   federal criminal matters pursuant to the All Writs Act, 28 U.S.C.

10  § 1651(a), United States v. Morgan, 346 U.S. 502, 506 (1954), but

11  may not entertain a petition for the writ with respect to

12  challenges to state convictions, Sinclair v. Louisiana, 679 F.2d

13  513, 513-15 (5th Cir. 1982); Madigan v. Wells, 224 F.2d 577, 578

14  n.2 (9th Cir. 1955).

15      Petitioner submits no support for his claim that the failure

16  of the court to hold a sua sponte hearing on the warrantless search

17  constitutes grounds for a writ of error coram nobis.  The state

18  court's failure to hold a hearing was not contrary to or an

19  unreasonable application of Supreme Court authority.

20  X. Trial Court Improperly Denied Marsden Motion (Claim 14)

21      Petitioner claims that the trial court improperly denied him a

22  hearing on his motion under People v. Marsden, 2 Cal. 3d 118

23  (1970).

24      The state appellate court addressed this claim on Petitioner's

25  second appeal.  Resp.'s Ex. B.  At the hearing after remand, the

26  court asked Petitioner if he still wanted to represent himself.

27  Petitioner replied that he did not, but that he had five motions to

28  submit to the court.  The court appointed Mr. Gray, the attorney

41

United States District Court
For the Northern District of California

who had represented Petitioner at his trial.  Petitioner then
informed the court that he had a <u>Marsden</u> motion to disqualify Mr.
Gray.  The court informed Petitioner that he had requested counsel,
that the court had granted that request and appointed counsel, and
that Petitioner first had to listen to counsel before he could move
to disqualify him.  After a recess, Mr. Gray informed the court
that Petitioner had several motions he wished to file, that counsel
had explained to him that he could not be represented by counsel
and file his own motions, and that, under <u>Faretta v. California</u>,
422 U.S. 806 (1975), Petitioner had again decided to represent
himself.  The court cautioned Petitioner about the dangers of self-
representation, asked Petitioner several questions regarding his
ability to represent himself, denied the <u>Faretta</u> motion and
continued the matter.  Two weeks later, Mr. Gray filed a memorandum
of points and authorities in which he argued that Petitioner had
the right to represent himself.  Two days after that, Petitioner
filed a written <u>Faretta</u> motion in which he explicitly waived his
right to counsel and asked to represent himself.

     At the next hearing, the court again warned Petitioner of the
dangers of representing himself, granted the <u>Faretta</u> motion,
relieved defense counsel, and found the <u>Marsden</u> motion moot.

     The appellate court explained that Petitioner's conduct in
court was inconsistent because he first requested counsel, then he
wanted to file his motions himself, then he again said he wanted
counsel.  The appellate court noted that the trial court did not
refuse to hold a <u>Marsden</u> hearing, but instructed Petitioner to
confer with his attorney and said that if there were problems
afterwards, the court would address the <u>Marsden</u> motion at that

**United States District Court**
For the Northern District of California

1 time.  The appellate court noted that, after consulting with

2 counsel, Petitioner advised the court that he wanted to represent

3 himself, and that a request for self-representation does not

4 trigger a duty to conduct a <u>Marsden</u> inquiry.

5     As discussed above, an indigent criminal defendant has no

6 right to counsel of his choosing, <u>see</u> <u>Wheat</u>, 486 U.S. at 159, and,

7 on federal habeas review, a claim based on the denial of a <u>Marsden</u>

8 motion, which arises under California law, is cognizable only if

9 its denial violated the petitioner's Sixth Amendment right to

10 effective assistance of counsel, <u>see</u> <u>Schell</u>, 218 F.3d at 1025.

11     As indicated by the appellate court, the trial court did not

12 deny Petitioner a hearing on his <u>Marsden</u> motion, it just postponed

13 the hearing until Petitioner could confer with counsel.

14 Furthermore, even if the <u>Marsden</u> motion had been improperly

15 ignored, as discussed above, Petitioner has failed to establish

16 that Mr. Gray provided ineffective assistance.  Therefore, the

17 denial of the <u>Marsden</u> motion did not violate Petitioner's Sixth

18 Amendment right to counsel.  The state court's denial of this claim

19 was not contrary to or an unreasonable application of Supreme Court

20 authority.

21 XI. Trial Court Improperly Denied Investigator, Typewriter and
    Access to Law Library (Claim 15)

22

23     Petitioner claims that, in his <u>Faretta</u> motion, he stated his

24 need for a private investigator, a typewriter and access to a law

25 library, and that the trial court's denial of these requests

26 violated his constitutional right to represent himself.

27     The record reflects that before the court granted Petitioner's

28 <u>Faretta</u> motion, it twice informed him that he would get no special

library privileges or investigator.  Resp.'s Ex. H (September 10,

**United States District Court**
For the Northern District of California

1992 hearing) at 5; (September 25, 1992 hearing) at 1.  Both times,
Petitioner told the court that he understood that he would get no
privileges.  Resp.'s Ex. H (September 10, 1992 hearing) at 5;
(September 25, 1992 hearing) at 2.

Thus, Petitioner asked to represent himself, he was warned of
the adverse consequences, he stated that he understood those
consequences, and he reaffirmed his request to represent himself,
which the court granted.  Petitioner does not explain how this
violates a federal constitutional right.  Nor can the Court find
any colorable constitutional violation.  Therefore, the state
court's denial of this claim was not contrary to or an unreasonable
application of Supreme Court authority.

XII. Request for Evidentiary Hearing

Based on the new evidence submitted, Petitioner requests the
Court hold on evidentiary hearing.

A federal evidentiary hearing is mandatory if (1) the
petitioner's allegations, if proven, would establish the right to
relief, and (2) the state court trier of fact has not, after a full
and fair hearing, reliably found the relevant facts.  <u>Williams v.
Calderon</u>, 52 F.3d 1465, 1484 (9th Cir. 1995); <u>Jeffries v. Blodgett</u>,
5 F.3d 1180, 1187 (9th Cir. 1993).  Where the petitioner fails to
make out a "colorable claim" for relief, an evidentiary hearing is
not required.  <u>Williams</u>, 52 F.3d at 1484.

Petitioner presents no evidence which, if believed, would
entitle him to relief.  Because Petitioner fails to make out a
colorable claim for relief, his request for an evidentiary hearing
is denied.

//

CONCLUSION

For the foregoing reasons, the Court denies the petition for a writ of habeas corpus and the motion for an evidentiary hearing.

IT IS SO ORDERED.

Dated:        September 30, 2009

_____
CLAUDIA WILKEN
United States District Judge